THE HONORABLE ROBERT S. LASNIK

Knoll Lowney
Meredith Crafton
SMITH & LOWNEY, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PUGET SOUNDKEEPER ALLIANCE, ) | NO. 2:16-cv-00445-RSL |
| Plaintiff, ) | |
| v. ) | SECOND AMENDED COMPLAINT |
| ) | |
| SAMSON TUG AND BARGE CO. INC., ) | |
| DUWAMISH MARINE CENTER, INC., ) | |
| JACQUELINE H. GILMUR, JAMES D. ) | |
| GILMUR,JAMES D. AND JACQUELINE ) | |
| H. GILMUR LIVING TRUST, and ) | |
| DUWAMISH METAL FAB, INC. ) | |
| ) | |
| Defendants. ) | |

## I.    INTRODUCTION

1.      This action is a citizen suit brought under Section 505 of the Clean Water Act

("CWA") as amended, 33 U.S.C. § 1365.  Plaintiff Puget Soundkeeper Alliance ("Soundkeeper")

seeks a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of

costs, including attorneys' and expert witnesses' fees for Defendants Samson Tug and Barge Co.,

Inc.'s ("Samson"), Duwamish Marine Center, Inc. ("DMC"), Jacqueline H. Gilmur, James D.

Gilmur (the "Gilmurs") and the James D. and Jacqueline H. Gilmur Living Trust (the "Trust"),

and Duwamish Metal Fab, Inc.'s ("Metal Fab") repeated and ongoing violations of Sections

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29

301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, and the terms and conditions of Samson's National Pollutant Discharge Elimination System ("NPDES") permit authorizing discharges of pollutants from Defendants' Seattle, Washington, facility to navigable waters.

## II.    JURISDICTION AND VENUE

2.    The Court has subject matter jurisdiction over Plaintiff's claims under Section 505(a) of the CWA, 33 U.S.C. § 1365(a).  Sections 309(d) and 505(a) and (d) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a) and (d) authorize the relief Plaintiff requests.

3.    Under Section 505 (b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Plaintiff notified Samson, the Trust, and the Gilmurs of their violations of the CWA and of Plaintiff's intent to sue under the CWA by letter dated and postmarked January 22, 2016 and delivered January 25, 2016 ("Notice Letter").  A copy of the Notice Letter is attached to this complaint as Exhibit 1.  Plaintiff sent an additional notice letter to the Gilmurs, the Trust and DMC dated and postmarked June 8, 2016 and delivered to the Gilmurs, the Trust and DMC on June 10, 2016 and June 14, 2016, respectively ("First Supplemental Notice Letter"). A copy of the First Supplemental Notice letter is attached to this complaint as Exhibit 2.  Plaintiff sent another notice letter to Samson, the Gilmurs, the Trust, DMC and Metal Fab dated and postmarked December 6, 2016 and delivered to the Gilmurs and the Trust December 9, 2016, to Samson December 12, 2016, to DMC December 13, 2016 and to Metal Fab December 13, 2016 ("Second Supplemental Notice Letter").  A copy of the Second Supplemental Notice Letter is attached to this complaint as Exhibit 3.  Plaintiff notified Defendants' Registered Agents, the Administrator of the United States Environmental Protection Agency ("USEPA"), the Administrator of USEPA Region 10, and the Director of the Washington Department of Ecology ("WDOE") of its intent

SECOND AMENDED COMPLAINT - 2
NO. 2:16-cv-00445-RSL

to sue Defendants by mailing copies of the Notice Letters to these officials on January 22, 2016, June 8, 2016 and December 6, 2016 respectively.

4.      More than sixty days have passed since the notices were served and the violations complained of in the Notice Letters are continuing or are reasonably likely to continue to occur. Defendants are in violation of Samson's and Metal Fab's NPDES permits and the CWA.  Neither the USEPA nor the WDOE has commenced any action constituting diligent prosecution to redress these violations.

5.      The source of the violations complained of is located in King County, Washington, within the Western District of Washington, and venue is therefore appropriate in the Western District of Washington pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), and 28 U.S.C. § 1391(b).

### III.      PARTIES

6.      Plaintiff, Puget Soundkeeper Alliance ("Soundkeeper"), is suing on behalf of itself and its member(s).  Soundkeeper is a non-profit corporation registered in the State of Washington.  Soundkeeper is a membership organization and has at least one member who is injured by Defendants' violations.  Soundkeeper is dedicated to protecting and preserving the environment of Washington State, especially the quality of its waters, by tracking down and stopping toxic pollution entering its waters.

7.      Plaintiff has representational standing to bring this action.  Soundkeeper's members are reasonably concerned about the effects of discharges of pollutants, including stormwater from Defendants' facility, on aquatic species and wildlife that Plaintiff's members observe, study, and enjoy. The recreational, scientific, economic, aesthetic and/or health interests of Soundkeeper and its member(s) have been, are being, and will be adversely affected by

SECOND AMENDED COMPLAINT - 3
NO. 2:16-cv-00445-RSL

1   Defendants' violations of the CWA.  The relief sought in this lawsuit can redress the injuries to

2   these interests.

3          8.      Plaintiff has organizational standing to bring this action.  Plaintiff has been

4   actively engaged in a variety of educational, advocacy, and restoration efforts to improve water

5   quality and to address sources of water quality degradation in the waters of western Washington

6   and Puget Sound.  Defendants have failed to fulfill monitoring, recordkeeping, reporting and

7   planning requirements, among others, necessary for compliance with its NPDES permits and the

8   CWA.  As a result, Plaintiff is deprived of information necessary to properly serve its members

9   by providing information and taking appropriate action. Plaintiff's efforts to educate and

10   advocate for greater environmental protection, and to ensure the success of environmental

11   restoration projects implemented for the benefit of its members are also precluded. Finally,

12   Plaintiff and the public are deprived of information that influences members of the public to

13   become members of Soundkeeper, thereby reducing Soundkeeper's membership numbers.  Thus,

14   Plaintiff's organizational interests have been adversely affected by Defendants' violations.

15   These injuries are fairly traceable to Defendants' violations and redressable by the Court.

16          9.      Defendant, Samson Tug and Barge Co, Inc. ("Samson") is a corporation

17   incorporated in Alaska and authorized to conduct business under the laws of the State of

18   Washington. Samson is an interstate shipping company that operates on a portion of a facility

19   located at or about 6361 1st Ave S, Seattle WA 98108 (the "facility").  The facility, as used in

20   this Second Amended Complaint, also includes any contiguous or adjacent properties owned or

21   operated by any of Defendants, including but not limited to 16 S. Michigan St., Seattle, WA

22   98108.

SECOND AMENDED COMPLAINT - 4
NO. 2:16-cv-00445-RSL

10.     Samson operates on the northern end of the facility, and its operations include shipping cargo such as fish, fish products, construction equipment, and vehicles.  Samson's loading equipment (forklifts, cranes, etc.) is also maintained on site.

11.     Defendant, Duwamish Marine Center, Inc. ("DMC") is a privately held corporation incorporated in Washington.

12.     DMC is an entity that operates on a southern portion of the facility.  DMC transfers and/or transloads sediment for shipment via the Duwamish Waterway to Waste Management in Seattle, Washington.  DMC is also a certified waste recipient for transfer or transloading of dredged sediment.

13.     Defendant Duwamish Metal Fab, Inc. ("Metal Fab") is a corporation incorporated in Washington.  Metal Fab is a metal fabrication corporation located at or about 16 S. Michigan St., Seattle, WA 98108, which is a contiguous property to Samson and DMC, and is part of the "facility," as defined in paragraph 9, supra.  Metal Fab's portion of the facility shares a stormwater management system with the rest of the facility.

14.     Defendant Trust owns the property on which Metal Fab., DMC, and Samson operate. The Trust or its representatives exercised sufficient control over the violations described herein to have liability for them under the CWA.

15.     Defendants the Gilmurs owned and operated DMC and Metal Fab. The Gilmurs or their representatives exercised sufficient control over the violations described herein to have liability for them under the CWA.

## IV.     LEGAL BACKGROUND

16.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person, unless in compliance with the provisions of the CWA.  Section 301(a)

SECOND AMENDED COMPLAINT - 5
NO. 2:16-cv-00445-RSL

prohibits, <u>inter alia</u>, such discharges not authorized by, or in violation of, the terms of a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

17.     The State of Washington has established a federally approved state NPDES program administered by the WDOE.  Wash. Rev. Code § 90.48.260; Wash. Admin. Code Ch. 173-220.  This program was approved by the Administrator of the USEPA pursuant to 33 U.S.C. § 1342(b).

18.     The WDOE has repeatedly issued the Industrial Stormwater General Permit ("Permit") under Section 402(a) of the CWA, 33 U.S.C. § 1342(a), most recently on October 21, 2009, effective January 1, 2010, modified May 16, 2012 (the "2010 Permit"), and on December 3, 2014, effective January 2, 2015 (the "2015 Permit").  The 2010 Permit and the 2015 Permit (collectively, "the Permits") contain substantially similar requirements and authorize those that obtain coverage thereunder to discharge stormwater associated with industrial activity, a pollutant under the CWA, and other pollutants contained in the stormwater to the waters of the State subject to certain terms and conditions.

19.     The Permits impose certain terms and conditions on those covered thereby, including monitoring and sampling of discharges, reporting and recordkeeping requirements, as well as restrictions on the quality of stormwater discharges.  To reduce and eliminate pollutant concentrations in stormwater discharges, the Permits require, among other things, that permittees develop and implement best management practices ("BMPs") and a Stormwater Pollution Prevention Plan ("SWPPP"), and apply all known and reasonable methods of prevention, control, and treatment ("AKART") to discharges.  The specific terms and conditions of the Permits are described in detail in the Notice Letters and incorporated by reference herein.  <u>See</u> Exhibits 1-3.

SECOND AMENDED COMPLAINT - 6
NO. 2:16-cv-00445-RSL

1

### V.    FACTS

2      20.    Pursuant to Condition S2 of the Permits, Samson filed with the WDOE an

3  Application for General Permit to Discharge Stormwater Associated with Industrial Activity.

4  WDOE granted Defendant coverage for operations of Samson Tug & Barge Co. under the

5  General Permit for Defendants' facility under permit number WAR011484.  WDOE previously

6  granted Defendant coverage under an earlier version of the General Permit for Defendants'

7  facility under permit number SO3011484.

8      21.    Metal Fab occupies the contiguous site to the south and shares common

9  ownership and overlapping stormwater management systems. Pursuant to Condition S2 of the

10  Permits, James Gilmur filed with the WDOE an Application for General Permit to Discharge

11  Stormwater Associated with Industrial Activity.  WDOE granted coverage for operations of

12  Duwamish Metal Fab, Inc. at the facility under a separate permit, permit number WAR125423.

13      22.    Defendants engage in industrial activity and discharge stormwater and other

14  pollutants to the Duwamish Waterway.

15      23.    The Gilmurs and the Trust maintain sufficient control over the entire facility and

16  the facility's discharges to make them jointly liable for any and all violations of any NPDES

17  permit applicable to the facility, including WAR011484 and WAR125423, and for any other

18  CWA violations at the facility.

19      24.    Stormwater discharges associated with DMC's industrial activities are not

20  permitted by any NPDES permit, including WAR011484 or WAR125423.

21      25.    Discharges from Defendants' facility contribute to the polluted conditions of the

22  waters of the State, including the Duwamish Waterway and Puget Sound.  Discharges from

SECOND AMENDED COMPLAINT - 7
NO. 2:16-cv-00445-RSL

Defendants' facility contribute to the ecological impacts that result from the polluted state of these waters and to Plaintiff's and their members' injuries resulting therefrom.

26.      The vicinity of the facility and the receiving waters are used by the citizens of Washington and visitors, as well as at least one of Plaintiff's members, for recreational activities, including boating, fishing, nature watching and sightseeing.  Plaintiff's member(s) also derive(s) aesthetic benefits from the receiving waters.  Plaintiff's and its members' enjoyment of these activities and waters is diminished by the polluted state of the receiving waters and by Defendants' contributions to such polluted state.

27.      Defendants have violated the Permits and Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, by discharging pollutants in violation of the NPDES Permits as well as discharging pollutants without an NPDES permit.  Defendants' violations of the Permits and the CWA are set forth in full in sections I through VIII of the Notice Letter and First Supplemental Notice Letter, and sections 1 through 5 of the Second Supplemental Notice letter, attached hereto as Exhibits 1, 2 and 3, respectively, and are hereby incorporated by reference.  In particular and among the other violations described in the Notice Letters, Defendants have discharged pollutants from their facility to waters of the United States without an NPDES permit, failed to sample the discharge that accurately characterizes stormwater runoff from the facility, failed to implement best management practices to control stormwater quality, failed to prevent illicit discharges, and failed to properly complete corrective actions as required by the Permits.

28.      DMC has violated and continues to violate Section 301(a) of the CWA, 33 U.S.C. § 1311(a), by discharging pollutants from the facility to waters of the United States without an NPDES permit.

SECOND AMENDED COMPLAINT - 8
NO. 2:16-cv-00445-RSL

29.     Defendants have violated the Permits and Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, by discharging pollutants not in compliance with the NPDES Permits.  Defendants have discharged stormwater containing levels of pollutants that exceed the benchmark values established by the Permits, including on the days on which Defendants collected samples with the results identified in bold in Tables 1 and 2 below.

30.     The stormwater samples identified in Table 1 reflect the stormwater monitoring results that Samson has submitted to WDOE.

31.     The stormwater samples identified in Table 2 reflect the stormwater monitoring results that Metal Fab has submitted to WDOE.

32.     Discharges of stormwater and/or wastewater from the facility cause and/or contribute to violations of water quality standards for zinc, copper, oil sheen, and turbidity in the Duwamish Waterway and have occurred during the last five years and continue to occur each and every day on which there was 0.1 inch or more of precipitation.

33.     Defendants' stormwater discharges are causing and/or contributing to violations of water quality standards and therefore violate the Permits.  Defendants' water quality standard violations are set forth in section II of the First Supplemental Notice Letter attached hereto as Exhibit 2 and are incorporated herein by this reference.

SECOND AMENDED COMPLAINT - 9
NO. 2:16-cv-00445-RSL

| TABLE 1: DISCHARGE MONITORING REPORT ("DMR") DATA FOR PERMIT NO.  WAR011484 SAMSON OUTFALL | | | | | |
|---|---|---|---|---|---|
| Quarter in which sample collected | Turbidity (Benchmark 25 NTU) | Zinc (Benchmark 117 µg/L) | Oil Sheen (Y/N) | Copper (Benchmark 14 µg/L) | Total Suspended Solids (mg/L) |
| 1Q 2010 | **1000 NTU** | **703 µg/L** | **Y** | **249 µg/L** | |
| 3Q2010 | 59.8 | 97.7 | N | 51.3 | |
| 4Q 2010 | **2000** | **4330** | N | **1640** | |
| 1Q 2011 | **923.4** | **362** | N | **122** | |
| 2Q 2011 | **763.4** | **676** | N | **180** | |
| 3Q 2011 | **1312** | **713** | N | **204** | |
| 1Q 2012 | **670** | **315** | N | **120** | |
| 2Q 2012 | **3000** | **1060** | N | **365** | |
| 4Q 2012 | **3000** | **616** | N | **146** | |
| 2Q 2013 | **954** | **1680** | N | **399** | |
| 4Q 2013 | **226** | **817** | N | **172** | |
| 1Q 2014 | **294** | **520** | N | **136** | |
| 2Q 2014 | **188** | **168** | N | **54.9** | |
| 1Q 2015 | **>3000** | **5490** | N | **1060** | **22300 mg/L** |

| TABLE 2: DMR DATA FOR PERMIT NO.  WAR125423 METAL FAB OUTFALL | | | | | | |
|---|---|---|---|---|---|---|
| Quarter in which sample collected | Turbidity (Benchmark 25 NTU) | Zinc (Benchmark 117 µg/L) | Copper (Benchmark 14 µg/L) | Total Suspended Solids* (mg/L) | Diesel NWTPHDx (Benchmark 10 mg/L) | Lead (Benchmark 81.6 µg/L) |
| 1Q 2012 | **>3,000 NTU** | **4,320 µg/L** | **827 µg/L** | No analysis | **16.5 mg/L** | **486 µg/L** |
| 2Q 2012 | **>3,000** | **1,720** | **381** | No analysis | 6.2 | **373** |
| 4Q 2012 | **431** | **332** | **76.1** | No analysis | 2.75 | 48.2 |
| 1Q 2013 | **>3,000** | **3,020** | **934** | No analysis | **14.8** | **229** |
| 2Q 2013 | **352** | **314** | **89.2** | No analysis | 1.8 | 55.2 |
| 1Q 2015 | **>3,000** | **3,990** | **859** | **26,200 mg/L** | 1.1 | **772** |

TABLES 1 and 2 - Key: **Bold** = benchmark exceedances

34.    Although Samson completed an updated SWPPP in November of 2015, this updated SWPPP fails to meet a number of the minimum requirements set forth in Condition S3.B.4.b.i of the Permits and referenced in section III of the Supplemental Notice Letter and are hereby incorporated by reference.

SECOND AMENDED COMPLAINT - 10
NO. 2:16-cv-00445-RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

35.     Although Metal Fab completed an updated SWPPP in August 2016, this updated SWPPP fails to meet a number of the minimum requirements set forth in Condition S3.B.4.b.i of the Permits and referenced in section 2 of the Second Supplemental Notice Letter and are hereby incorporated by reference.  Samson's SWPPP and Metal Fab's SWPPP are collectively referred to herein as "the SWPPPs."

36.     On information and belief, Defendants have violated these requirements of the Permits each and every day during the last five years and continues to violate them because their SWPPPs are not consistent with permit requirements, is not fully implemented, and has not been updated as necessary.

37.     Defendants' SWPPPs fail to include current conditions at the facility.

38.     Condition S8.D.2.b of the 2010 Permit required that a licensed professional engineer, geologist, hydrogeologist, or certified professional in storm water quality must design and stamp the portion of the SWPPP that addresses stormwater treatment structures or processes. Condition S8.D.2 of the 2015 Permit requires that a qualified industrial stormwater professional review the portion of the revised SWPPP, sign the SWPPP Certification Form, and certify that it is reasonably expected to meed the permit benchmarks upon implementation.  Defendants' SWPPPs fail to include the required information about its stormwater treatment systems, and is not designed, stamped and certified as required by a qualified professional.

39.     Defendants' SWPPPs fail to include sampling plans that comply with the Permits' sampling requirements, which include Condition S4.B of the Permits.  For example, but not by way of limitation, Defendants' sampling plan designates "OUT1" as the only sampling location for the facility but samples taken from this location are not representative of stormwater discharges from the facility because there are other areas such as piers, docks, loading areas, and

SECOND AMENDED COMPLAINT - 11
NO. 2:16-cv-00445-RSL

fueling areas where industrial activities occur which drain directly to the Duwamish Waterway and are not sampled.  The SWPPPs do not contain the requisite information to justify sampling only from OUT1.

40.    Condition S4.B of the Permits require the permittees to collect a sample of its stormwater discharge once during every calendar quarter.  Conditions S3.B.5.b and S4.B.2.c of the Permits require the permittees to collect stormwater samples at each distinct point of discharge offsite except for substantially identical outfalls, in which case only one of the substantially identical outfalls must be sampled.

41.    Defendants have violated the monitoring and reporting requirements in the Permits as outlined in section IV of the First Supplemental Notice Letter attached hereto as Exhibit 2, and section 2 of the Second Supplemental Notice letter attached hereto as Exhibit 3 and are incorporated herein by this reference.   Defendants have failed to collect stormwater samples and/or submit discharge monitoring reports during all quarters as required by the Permits.

42.    Defendants have violated and continue to violate monitoring and reporting conditions because Defendants take stormwater samples from a single location that it refers to as OUT1, which is located at the south-west end of the facility.  Defendants do not take representative samples from each distinct point of discharge off-site each quarter. Discharge points may include, but are not limited to drains, piers, docks, loading areas, and fueling areas where industrial activities occur.

43.    Condition S4.B of the Permits requires Defendants to collect a sample of stormwater discharge from the facility once during every calendar quarter.  Condition S4.B.1.d of the Permits requires Defendants to obtain representative samples, which Appendix 2 of the

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Permits defines as "a sample of the discharge that accurately characterizes stormwater runoff generated in the designated drainage area of the facility."

44.     Defendants did not conduct and/or complete the corrective action responses as required by the Permits.  These requirements of the Permits and Defendants' violations thereof are described in section V of the First Supplemental Notice Letter, attached hereto as Exhibit 2, and are incorporated herein by this reference.

45.     Condition S8.B of the Permits requires a permittee to undertake a Level 1 corrective action whenever it exceeds a benchmark value identified in Condition S5.  A Level 1 corrective action comprises review of the SWPPP to ensure permit compliance, revisions to the SWPPP to include additional operational source control BMPs with the goal of achieving the applicable benchmark values in future discharges, signature and certification of the revised SWPPP, summary of the Level 1 corrective action in the annual report, and full implementation of the revised SWPPP as soon as possible, but no later than the DMR due date for the quarter the benchmark was exceeded.  Condition S8.A of the 2015 Permit requires that Defendants implement any Level 1 corrective action required by the 2010 Permit.

46.     Samson triggered Level 1 corrective action requirements for each benchmark exceedance identified in Table 1 above.  Metal Fab triggered Level 1 corrective action requirements for each benchmark exceedance identified in Table 2 above.  Defendants violated the requirements of the Permits described above by failing to conduct Level 1 corrective actions in accordance with Permit conditions, including the required review, revision, and certification of the SWPPP, the required implementation of additional BMPs, and the required summarization in the annual report, when it exceeded benchmarks.

SECOND AMENDED COMPLAINT - 13
NO. 2:16-cv-00445-RSL

47.     Condition S8.C of the Permits requires Defendants take specified actions, called a "Level Two Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range for pH for any two quarters during a calendar year.  Condition S8.A of the 2015 Permit requires that Defendants implement any Level Two Corrective Action required by the 2010 Permit.

48.     Defendants triggered Level 2 corrective action requirements each and every time quarterly stormwater sample results exceeded an applicable benchmark value or were outside the benchmark range for pH for any two quarters during a calendar year. Defendants failed to conduct Level 2 corrective actions in accordance with permit conditions, including the required review, revision and certification of the SWPPP, the required implementation of additional BMPs to ensure that all points of discharge from the facility meet benchmarks (not just the sampled point of discharge), including additional structural source control BMPs, and the required summarization in the annual report.  These violations include, but are not limited to, Samson's failure to fulfill these obligations for turbidity, zinc, and copper triggered by its stormwater sampling during the calendar year of 2010, 2011, 2012 and 2013, and Metal Fab's failure to fulfill these obligations for turbidity, zinc and copper triggered by its stormwater sampling during calendar year 2012 and 2013, and for lead in 2012.

49.     Condition S8.D of the Permits requires Defendants take specified actions, called a "Level Three Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range for pH for any three quarters during a calendar year.  Condition S8.A of the 2015 Permit requires that Defendants implement any Level Three Corrective Action required by the 2010 Permit.

SECOND AMENDED COMPLAINT - 14
NO. 2:16-cv-00445-RSL

50. Defendants triggered Level 3 corrective action requirements every time in the last five years its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH for any three quarters during a calendar year. Defendants have violated the requirements of the Permits described above by failing to conduct a Level Three Corrective Action in accordance with permit conditions, including the required review, revision and certification of the SWPPP, including the requirement to have a specified professional design and stamp the portion of the SWPPP pertaining to treatment, the required implementation of additional BMPs, including additional treatment BMPs to ensure that all points of discharge from the facility (not just the sampled point of discharge) meet benchmarks, the required submission of an engineering report, plans, specifications, and an operations and maintenance plan prior to construction/installation, and the required summarization in the annual report each time during the last five years its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH for any three quarters during a calendar year. As indicated in Table 1 for Samson and Table 2 for Metal Fab, these violations include, but are not limited to, Samson's failure to fulfill these obligations for turbidity, zinc, and copper triggered by their stormwater sampling during the calendar year of 2011 and 2012, and Metal Fab's failure to fulfill these obligations for turbidity, zinc and copper triggered by its stormwater sampling during calendar year 2012. Moreover, if Samson and Metal Fab's sampling data came from the same sampling location, taking the results from the same sampling location together Metal Fab and Samson triggered these obligations for turbidity, zinc and copper in 2013, which Defendants also failed to fulfill.

51. Condition S9.B of the Permits requires Defendants to submit an accurate and complete annual report to WDOE no later than May 15th of each year that includes specific

SECOND AMENDED COMPLAINT - 15
NO. 2:16-cv-00445-RSL

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

information.  Defendants have violated this condition by failing to include all of the required information in the annual report it submitted for 2010, 2011, and 2012 and failed to submit completed Annual Reports for 2013, 2014, or 2015.  For example, each of these reports fails to include all information about potential and actual stormwater problems identified during the previous calendar year through month site inspections.  These reporting requirements and violations are described in section VI of the First Supplemental Notice Letter, attached hereto as Exhibit 2, and are incorporated herein by this reference.

52.     Defendants have violated and continue to violate Condition S9.C. of the Permits which requires Samson and Metal Fab to retain records for a minimum of five years a copy of the Permits.  These violations are described in section VII of the First Supplemental Notice Letter, attached hereto as Exhibit 2, and are incorporated herein by this reference.

53.     Defendants have violated and continue to violate Condition S5.E. of the Permits which prohibits illicit discharges and the discharge of process wastewater.  These violations are described in section VIII of the First Supplemental Notice Letter, attached hereto as Exhibit 2, and sections 4 and 5 of the Second Supplemental Notice Letter, attached hereto as Exhibit 3, and are incorporated herein by this reference.

54.     Appendix 2 of the Permits defines "illicit discharges" to include "any *discharge that is not composed entirely of stormwater* except (1) discharges authorized pursuant to a separate NPDES permit, or (2) conditionally authorized non-stormwater discharge identified in Condition S5.D."  Defendants have violated and continue to violate these conditions by discharging from the facility pollutants other than those contained in and carried by its industrial stormwater as authorized by the Permits.  This includes, but is not limited to, vehicle wash water as well as discharges of non-stormwater pollutants from the facility.  For example, Defendants

SECOND AMENDED COMPLAINT - 16
NO. 2:16-cv-00445-RSL

discharged illicit point source discharges from the facility on September 21, 2016, including sediment and other unidentified material spilling into the Duwamish Waterway from a mechanical loader situated on a barge at the facility.  Defendants have discharged such illicit discharges on each and every day over the past five years Defendants transferred and/or transloaded sediment or other materials to or from barges at the facility and these activities are reasonably likely to continue to occur.  These illicit discharge violations are described in section 3 of the Second Supplemental Notice Letter, attached hereto as <u>Exhibit 3</u>, and are incorporated herein by this reference.

55.     Defendants discharge sediment, other material handled at the facility, and wash water, all pollutants under the CWA, to the Duwamish Waterway without NPDES Permit authorization.  Defendants discharge pollutants from mechanical loaders, from pier surfaces, and from personnel using hoses, shovels and/or brooms, among other point source discharges.  These unpermitted discharge violations are described in section 4 of the Second Supplemental Notice Letter, attached hereto as <u>Exhibit 3</u>, and incorporated herein by this reference.

56.     A significant penalty should be imposed against Defendants pursuant to the penalty factors set forth in 33 U.S.C. § 1319(d).

57.     Defendants' violations of the CWA degrade the environment and the water quality of the receiving water bodies.

58.     Defendants have benefited economically as a consequence of their violations and their failure to timely implement improvements at the facility.

## VI.     CAUSE OF ACTION

59.     The preceding paragraphs are incorporated herein.

SECOND AMENDED COMPLAINT - 17
NO. 2:16-cv-00445-RSL

60.     Defendants' violations of Samson's and Metal Fab's NPDES permits described herein and in the Notice Letters constitute violations of sections 301 and 402 of the Clean Water Act, 33 U.S.C. §§ 1311 and 1342, and violations of "effluent standard(s) or limitation(s)" as defined by section 505, 33 U.S.C. § 1365.

61.     On information and belief, violations committed by Defendants are ongoing or are reasonably likely to continue to occur.  Any and all additional violations of the Permits and the CWA which occur after those described in Plaintiff's Notice Letters but before a final decision in this action should be considered continuing violations subject to this Complaint.

62.     Without the imposition of appropriate civil penalties and the issuance of an injunction, Defendants are likely to continue to violate the General Permit and the CWA to the further injury of the Plaintiff, its member(s) and others.

63.     A copy of this Complaint was served upon the Attorney General of the United States and the Administrator of the USEPA as required by 33 U.S.C. § 1365(c)(3).

## VII.    RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

A.     Issue a declaratory judgment that Defendants have each violated and continue to be in violation of the Permits and Sections 301 and 402 of the Clean Water Act, 33 U.S.C. §§ 1311 and 1342;

B.     Enjoin Defendants from operating the facility in a manner that results in further violations of the Permits or the Clean Water Act;

C.     Order Defendant DMC to immediately obtain proper coverage under the Permits.

SECOND AMENDED COMPLAINT - 18
NO. 2:16-cv-00445-RSL

1

2

D.      Order Defendants to immediately implement Storm Water Pollution Prevention Plans that are in compliance with the Permits, and to provide Plaintiff with a copy of these Plans, and to take other necessary actions to bring them into compliance with the Clean Water Act;

E.      Order Defendants to allow Plaintiff to participate in the development and implementation of Defendants' Storm Water Pollution Prevention Plans;

F.      Order Defendants to provide Plaintiff, for a period beginning on the date of the Court's Order and running for one year after Defendants achieve compliance with all of the conditions of the Permits, with copies of all reports and other documents which Defendants submit to the USEPA or to the WDOE regarding Defendants' coverage under the Permits at the time it is submitted to these authorities;

G.      Order Defendants to take specific actions to remediate the environmental harm caused by its violations;

H.      Order Defendants to pay civil penalties of $37,500.00 per day of violation for each violation committed by Defendant through November 2, 2015 and to pay $51,570 per day of violation for each violation committed by Defendant after November 2, 2015, pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19 and 19.4.;

I.      Award Plaintiff their litigation expenses, including reasonable attorneys' and expert witnesses' fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d); and

J.      Award such other relief as this Court deems appropriate.

SECOND AMENDED COMPLAINT - 19
NO. 2:16-cv-00445-RSL

RESPECTFULLY SUBMITTED this 21st day of March, 2017.

SMITH & LOWNEY, PLLC

By:      _s/ Meredith A. Crafton_
         Meredith A. Crafton, WSBA #46558

By:      _s/ Knoll Lowney_
         Knoll Lowney, WSBA # 23457
         Attorneys for Plaintiff
         2317 E. John St.,
         Seattle, WA 98112
         Tel: (206) 860-2883
         Fax: (206) 860-4187
         E-mail: knoll@igc.org, meredithc@igc.org

SECOND AMENDED COMPLAINT - 20
NO. 2:16-cv-00445-RSL

1

## CERTIFICATE OF SERVICE

2

3          I hereby certify that on this day I electronically filed the foregoing with the Clerk of the

4    Court using the CM/ECF system which will send notification of such filing to the attorneys of

5    record.

6

7    DATED this 21st day of March 2017.

8                                              s/ *Meredith A. Crafton*

9                                              MEREDITH A. CRAFTON

10                                             Smith & Lowney, PLLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

SECOND AMENDED COMPLAINT - 21          Smith & Lowney, p.l.l.c.
NO. 2:16-cv-00445-RSL                   2317 East John Street
                                        Seattle, Washington 98112
                                        (206) 860-2883